UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

STEPHEN STEDMAN,     )
     )
     Plaintiff,     )
     )
     v.     )     No. 2:17-cv-00398-JRS-DLP
     )
CITY OF TERRE HAUTE,     )
     )
     Defendant.     )

## Order on Motion for Summary Judgment

This case arises out of an employment relationship between Plaintiff Stephen Stedman and the City of Terre Haute, Indiana (the "City"). Stedman is a former employee of the City's Terre Haute Street Department (the "Street Department"). He alleges that he was subjected to sexual harassment in retaliation for supporting a witness in a claim by another employee who was being harassed by coworkers and for opposing the sexual and other harassment of that coworker, Terry Fish, who is disabled. Stedman also claims that he was forced to resign because of the harassment.

Stedman asserts claims for retaliatory discrimination, sexual harassment, and negligent supervision. The City moves for summary judgment on all of Stedman's claims. (ECF No. 25.) For the reasons that follow, the Court finds that the motion should be granted in part and denied in part.

### I.    Background

Steven Stedman (hereinafter "Stedman") began his employment with the City

in around October 2005 as a laborer in the City's Street Department. (ECF No. 25-1 at 2.) Stedman worked in a number of areas and ended up operating a sweeper, where he remained until he left the City's employment in 2016. (ECF No. 25-1 at 3–5.) As a sweeper, his foreman was Ray Hollingsworth. (ECF No. 25-1 at 4.)

Terry Fish, Sr., was employed in a maintenance position in the Street Department's garage. (ECF No. 25-2 at 2-3.) Fish had diminished mental capacity. (ECF No. 25-2 at 3.) In 2013 or 2014, Monty Stillman, another Street Department employee, confronted a group of employees, including Russell Pruden, for harassing Fish. (ECF No. 25-5 at 2.) Pruden had said of Fish: "That retarded bastard should get out of here because my son needs a job." (No. ECF 25-5 at 2.) Stillman reported this comment to the City's Transportation Director and Street Department Commissioner, Brad Miller; Miller assured Stillman that Fish's job was secure. (ECF No. 25-2 at 2; ECF No. 25-5 at 2.) Stillman also took his concerns about the harassment of Fish to the City's Human Resources Department, the City Attorney, and the Mayor. (ECF No. 25-5 at 3–4.) Stedman also reported harassment of Fish to Miller; Stedman was unsure of the timing of his report. (ECF No. 25-1 at 13.)

In November 2015, a tort claim notice was served on the City on behalf of Fish, and the Equal Employment Opportunity Commission ("EEOC") conducted an investigation into the alleged disability discrimination against Fish. (ECF No. 25-2 at 4; ECF No. 25-5 at 5-6.) Stillman was listed as the only witness. (ECF No. 25-

[5 at 6.](#)) The local media was contacted regarding this tort claim notice, and a local television station ran a story on its news program and published the tort claim notice on its website. ([ECF No. 25-5 at 6.](#))

At his deposition, Stedman was asked to describe the harassment on which his claims are based. He testified that before the Fish tort claim notice and EEOC investigation, he was harassed by his foreman, Hollingsworth, who showed favoritism to other sweeper operators in job assignments and in ensuring that repairs to sweepers were done. However, Stedman also attributed the lack of repairs to his sweeper to budget constraints and said that when he got promoted to a better sweeper, Hollingsworth "was a little fairer" to him. ([ECF No. 25-1 at 4-5.](#)) Stedman testified that within the first five years of his employment with the City, a coworker, Jeff Crabill, engaged in sexually inappropriate conduct directed toward Stedman. Stedman said of Crabill: "He's kind of a smart-mouth person that's – if anything [was] going on in the area, then if you said a certain way to do a job, then he'd just call you 'stupid son of a bitch,' and, you know, 'You don't do it that way.' And I just – early I just stayed away from him." ([ECF No. 25-1 at 7.](#)) Crabill treated others in the same manner. ([ECF No. 25-1 at 7.](#)) In addition, twice during the first five years of Stedman's employment with the Street Department, when Crabill and Stedman were playing cards, Crabill grabbed Stedman's knee and was massaging it. ([ECF No. 25-1 at 7.](#)) Stedman told Crabill not to touch him "like that." ([ECF No. 25-1 at 7.](#)) Stedman did not report Crabill's alleged harassment or abuse to anyone. ([ECF No. 25-1 at 7.](#))

Stedman also testified that Russell Pruden made comments about "kicking crackers' ass," but Pruden did not single out Stedman for such comments. Pruden twice made inappropriate sexual comments about Stedman's relationship with Stillman. ([ECF No. 25-1 at 8-9](#).) Stedman said that Pruden was trying to show off for some of his friends and "just didn't like" Stedman. ([ECF No. 25-1 at 8](#).) When Stedman reported these incidents to Miller, Miller investigated and questioned the two witnesses that Stedman had identified, but the witnesses denied having heard the comments. Pruden denied making the comments as well. ([ECF No. 25-1 at 9](#).) Stedman believed the witnesses falsely denied not hearing the comments because they, like Pruden, are African American and they were protecting Pruden. ([ECF No. 25-1 at 9](#).) Pruden also made comments about the shape of Stedman's breasts. ([ECF No. 25-1 at 8-9](#).)

Stedman claims that he was harassed by coworkers who called him "Titties" or "Titty Boy." When he reported this to Commissioner Miller, Miller spoke with the individuals involved. Stedman did not complain to Miller about such name-calling again, so Miller assumed that the name-calling had stopped ([ECF No. 25-2 at 5](#).) Stedman said that he was sure Pruden made some other comments to him, but he could not recall them at his deposition. ([ECF No. 25-1 at 9](#).) Stedman also identified Lorenzo De La Rosa as a coworker who did not treat him kindly; according to Stedman, De La Rosa was "a nasty person as far as rude with a lot of stuff." ([ECF No. 25-1 at 12](#).)

Several witnesses corroborated Stedman's account of harassment. Michael

Johnson testified that "it was pretty well known that . . . Stedman would relay anything that was going on [to Stillman]." (ECF No. 43-3 at 7.) Coworker John Norton testified that Stedman was taunted at the Street Department and that his nickname at the Street Department was "Tits," which was used pretty consistently. (ECF No. 43-4 at 11–12.) Norton also stated that he witnessed about four other Department employees juggle Stedman's breasts. (ECF No. 43-4 at 12.) Jerry Hoopingarner testified that other employees, including De La Rosa, called Stedman "Titty Boy all the time." (ECF No. 43-2 at 16.)

Another aspect of the allegedly harassing conduct took the form of comments to and the playing of songs for Stedman that suggested he and Stillman were in a romantic relationship. Stedman was asked, "Is your boyfriend back?" in reference to Stillman, and at least two witnesses testified that songs such as "My Boyfriend's Back," "Only the Lonely," and "Crybaby" were played to harass Stedman; the song playing occurred around the same time that Stillman was off work following an injury, after his return to work in April 2016, and again when his employment was terminated. (ECF No. 43-2 at 16; ECF No. 43-6 at 8.) Other songs were played to harass Stedman. (ECF No. 43-2 at 17.) Stedman stated that Paul Stone would play sexual songs and Ray Hollingsworth would sing "Your boyfriend's back" to Stedman. (ECF No. 25-1 at 10.) Scott Eisman testified that if Bryan Driskill and Russel Pruden did not like someone, they would make that person's "life a living hell" and refuse to fix his equipment. (ECF No. 43-6 at 9.)

In February 2015, because of complaints about harassment in the Street

Department, Jama DeBow, the City's Human Resources Director, interviewed numerous Street Department employees about the alleged harassment. (ECF 25-3 at 3–4.) Among the employees she spoke with, Stillman was "the common denominator" for complaints. (ECF No. 25-3 at 5.) DeBow recommended to the City Attorney that Stillman's employment be terminated. (ECF No. 25-3 at 8.) In late 2015 through early 2016, Stillman was off work because of a knee injury. (ECF No. 25-5 at 7.)

In April 2016, before Stillman returned to work, twenty-seven employees in the Street Department signed a petition complaining of harassment by Stillman over ten years and asking for his termination or transfer out of the Department. (ECF No. 25-4.) The City Legal Department interviewed the complaining employees and informed Miller that he should suspend Stillman with pay until a final decision had been made. (ECF No. 25-3 at 6–7; ECF 25-2 at 6.) A few weeks later, the Legal Department recommended that Stillman be terminated, and Miller terminated Stillman's employment. (ECF No. 25-2 at 6).

Shortly thereafter, Stedman resigned effective May 31, 2016. (ECF No. 25-1 at 3, 22.) He alleges that after Stillman's termination, Pruden threatened him, "you're next," and Stedman reported this to Miller who assured Stedman that Pruden had no authority to fire him. (ECF No. 25-1 at 20–21). Pruden was not a supervisor, foreman, or otherwise authorized to terminate Stedman's employment. (ECF No. 25-1 at 21.) According to Stedman, once Stillman was put on leave prior to his termination, the verbal harassment of Stedman eased up and he was instead given the silent

treatment. (ECF No. 25-1 at 18.) Stedman could not recall any acts of harassment or abuse of Stedman after Stillman's employment was terminated. (ECF No. 25-1 at 19.) Nonetheless, Stedman had concluded that he would not be left alone, and he was taking anxiety medication because of the harassment and bullying at work. (ECF No. 43-9 at 1.) So he decided to resign.

Stedman was never threatened with termination by anyone with authority to fire him. (ECF No. 25-1 at 17–18.) Stedman was never suspended. (ECF No. 25-1 at 17.) Neither his pay nor his hours were changed; however, Stedman had requested the day off for his birthday, but a secretary pulled out his request from the schedule because she did not like him. (ECF No. 25-1 at 17–18, 22–23.)

Stedman explained that he was "forced" to retire because he knew he "was going to have to carry around a recorder every day that [he went] in and face these people that were bad." (ECF No. 25-1 at 18.) When Stedman had complained to Miller that people were teasing Stedman, Miller told Stedman that it might be because of his association with Stillman, and because "just about everybody at one time or another had a problem with" Stillman. (ECF No. 25-2 at 5.) Miller recommended that Stedman wear a tape recorder at work in order to obtain proof of alleged harassment. (ECF No. 43-10 at 11.) Stedman also said that his decision to retire was due in part to his "just holding a grudge and staying mad at times" and that "[m]aybe I shouldn't have done that. I'm just the guy that don't like to be messed with. I was trying to do my job and go home." (ECF No. 25-1 at 13.)

In August 2017, Stedman filed his Complaint, alleging retaliatory discrimination

in violation of the Americans with Disabilities Act ("ADA"), sexual harassment in violation of Title VII of the Civil Rights Act of 1964, and a state-law claim for negligent supervision. The City has moved for summary judgment on all claims.

## II. Discussion

 "A district court properly grants summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). A court must draw all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The non-movant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-movant fails to establish an essential element of his case, there is a complete failure of proof, and the movant is entitled to judgment as a matter of law. *Id.* at 323. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Giles*, 914 F.3d at 1048 (stating that the non-movant must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture"). Where the "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

In an employment discrimination or retaliation case, a plaintiff's claims survive summary judgment where the evidence permits "a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). When ruling on summary judgment, courts must consider the evidence as a whole. *See id.*

## A. ADA Retaliation Claim

The ADA's retaliation provision prohibits discrimination against any individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The ADA further provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his . . . having *aided or encouraged any other individual* in the exercise or enjoyment of, any right granted or protected by this chapter." *Id.* § 12203(b) (emphasis added). To survive summary judgment on an ADA retaliation claim, a plaintiff must produce evidence showing that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse action; and (3) there is a causal connection between the two. *Rowlands v. United Parcel Serv.-Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018); *Guzman v. Brown Cty.*, 884 F.3d 633, 642 (7th Cir. 2018). Assuming that a hostile-work-environment

claim is cognizable under the ADA,[1] to establish such a claim, a plaintiff must show that his work environment was both subjectively and objectively hostile; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was sufficiently severe or pervasive; and (4) there is a basis for employer liability. *Boss v. Castro*, 816 F.3d 910, 919–20 (7th Cir. 2016).

The City argues that Stedman's retaliation claim fails for lack of any evidence: (1) of an adverse employment action; (2) of a causal link between the protected activity and any adverse action; and (3) that any harassment was sufficiently severe or pervasive. (ECF No. 26 at 9–12.) The City also contends that Stedman has not requested any relief available under the ADA. (ECF No. 26 at 12.)

In response, Stedman maintains that he suffered an adverse action in the form of harassment and constructive discharge. He argues that he has raised a genuine issue of fact as to whether there is a causal connection between a protected activity and his harassment and whether the harassment was sufficiently severe and pervasive. He further argues that the Court should decline to follow Seventh Circuit precedent on the availability of compensatory and punitive damages for ADA retaliation claims.

### 1. Adverse Action

The City argues that the only two potential adverse actions were (1) verbal warnings for hazing a coworker and (2) missing a requested day off. (ECF No. 26 at 10.)

---

[1] The Seventh Circuit has not decided whether hostile-work-environment claims are cognizable under the ADA. *See, e.g., Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009). However, the Seventh Circuit and district courts within it have assumed that the ADA could support such a claim and have applied the framework developed in the Title VII context to analyze such claims. *See, e.g., id.* This Court does the same.

The City contends that these are minor and trivial and do not constitute retaliation under the ADA. Stedman responds that he has presented sufficient evidence to create a genuine issue of material fact as to whether he suffered an adverse action in the form of retaliatory hostile-work-environment harassment and constructive discharge. ([ECF No. 42 at 14](#).)

Certain conduct cannot be considered adverse actions: "petty slights, minor annoyances, and simple lack of good manners," mere verbal warnings, and "unfair reprimands . . . unaccompanied by some tangible job consequence." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Boss*, 816 F.3d at 919 (a single reassigned day of flexible worktime was not a materially adverse action); *Vance v. Ball State Univ.*, 646 F.3d 461, 475 (7th Cir. 2011) (holding verbal warnings cannot be an adverse action). The Court finds that the verbal warnings and missed day off do not constitute adverse actions.[2] However, as noted, Stedman claims that he was subjected to a hostile-work-environment and constructive discharge in retaliation for activity protected under the ADA.

For hostile-work-environment harassment to constitute actionable discrimination, the conduct "must be severe or pervasive." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998). Thus, "the ultimate question" is "whether the harassment is sufficiently severe *or* pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477

---

[2] But even if the missed day off were to be considered an adverse action, the record lacks any evidence to suggest a causal link between any protected activity of Stedman's and the secretary's removal of Stedman's requested day off.

U.S. 57, 67 (1986) (alteration in original, emphasis added); *see also Faragher v. City of Boca Raton*, 524 U.S. 786, 775 (1998). In considering whether harassment is actionable, courts consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[T]he law 'does not prohibit all verbal or physical harassment in the workplace.'" *Silk v. City of Chicago*, 194 F.3d 788, 804 (7th Cir. 1999) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)).

While the harassment of which Stedman complains includes some physical touching and interference with his work performance (the refusal to service his sweeper), most of it consists of name-calling as well as rude and insensitive, if not demeaning comments, accompanied by the playing of songs suggesting that Stedman and Stillman had a romantic or sexual relationship. None of this is particularly severe or physically threatening, but a reasonable jury could find that the harassment was humiliating and sufficiently pervasive. Indeed, Stedman has produced evidence that he "was taunted" at the Street Department and that he was given the nicknames "Tits" and "Titty Boy" which were used, according to one witness, "pretty consistent[ly]", and according to another "all the time." (ECF No. 43-4 at 11–12; ECF No. 43-2 at 16.) In fact, one of Stedman's witnesses said about the harassment of Stedman, "there was always something . . . they [the harassers] would do it repetitive." (ECF No. 43-2 at 17.) The Court finds that Stedman has produced sufficient evidence to raise a

genuine issue as to whether he was subjected to sufficiently severe or pervasive harassment as to create a hostile work environment.

Stedman also is asserting a claim for retaliatory constructive discharge. As the Supreme Court reiterated in *Pennsylvania State Police v. Suders*:

> For an atmosphere of sexual harassment or hostility to be actionable . . . , the offending behavior "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.

542 U.S. 129, 146–47 (2004) (quoting *Meritor,* 477 U.S. at 67) (internal quotation marks and brackets omitted). While Stedman has presented enough evidence to raise a question of fact as to whether he was subjected to a hostile-work environment, the Court finds on the record before it that he has not presented enough evidence to show that his working conditions were so intolerable that a reasonable person would have felt compelled to resign. The harassment was not physically threatening or intimidating; but, rather, it consisted of a constant barrage of humiliating comments.

Furthermore, the evidence shows that the harassment declined while Stillman was off work and after Stillman's employment was terminated, which occurred before Stedman's resignation. In fact, Stedman could not recall any acts of harassment or abuse of him after Stillman's employment was terminated. (ECF No. 25-1 at 19.) Given this record, no reasonable jury could find that a reasonable person would have felt compelled to resign.

13

## 2. Causation

To prove causation, a plaintiff must show that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (Title VII case); *see also Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018) ("To prove causation, the plaintiff must show that 'the desire to retaliate was the but-for cause of the challenged employment action.'") (quoting *Nassar*). In other words, a plaintiff must demonstrate a triable issue as to whether the adverse action or hostile-work environment "was motivated by an impermissible purpose." *Muhammad v. Caterpillar, Inc.,* 767 F.3d 694, 699 (7th Cir. 2014). The plaintiff may present direct evidence such as an admission by the employer of an impermissible animus. The plaintiff may also present "circumstantial evidence that is strong enough, taken as a whole," to permit an inference of impermissible animus. *Id.*

The City contends that Stedman has no evidence of a causal link between his support of Fish's EEOC complaint or another protected activity under the ADA and any adverse action. (ECF No. 26 at 10.) The City maintains that Stedman attributed the harassment to the harassers' dislike of him, their own personalities, or his association with Stillman. Stedman responds that the record demonstrates Commissioner Miller told Stedman that the teasing and other mistreatment of Stedman may be related to his association with Stillman. Stedman also argues that it was acknowledged in the Street Department that "Stedman would relay anything that was told to Monty [Stillman]" (ECF No. 43-3 at 7), and Stillman was a known cooperator in the Fish

investigation.  (ECF No. 42 at 15.)  Stedman argues that the evidence shows that some of his maltreatment came in close proximity to Stillman's return to work.  Furthermore, Stedman asserts that he had reported Fish's harassment to Commissioner Miller.  (ECF No. 25-1 at 13.)

The Seventh Circuit has recognized that "[a]n employee engages in a protected activity by either: (1) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or other employment statutes; or (2) opposing an unlawful employment practice." *Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013); *see also* 42 U.S.C. § 12203(b) (making it "unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his . . . having *aided or encouraged* any other individual in the exercise . . . of, any right granted or protected by this chapter") (emphasis added).

Stedman has presented enough evidence to raise a reasonable inference that he aided or assisted in any manner in the Fish EEOC investigation.  First, the City's own evidence suggests that Stedman was being harassed because of his association with Stillman:  Miller said so.  Stillman had been identified as a witness in the EEOC investigation, and Stedman has offered evidence that "it was pretty well know that . . . [he] would relay anything that was going on [to Stillman]."  (ECF No. 43-3 at 7.) "What was going on" could include harassment of Fish.  Further, by relaying information about harassment of Fish to Stillman, Stedman arguably aided and assisted Stillman in his participation as a witness in the EEOC investigation.   Moreover, there is evidence to establish a temporal connection between harassment of Stedman

and Stillman's return to work. The Court finds that Stedman has presented circumstantial evidence that is strong enough, though barely, to raise a reasonable inference that some harassment of Stedman was motivated by a retaliatory animus.

A reasonable jury also could find that the harassment of Stedman was not based on any assistance or encouragement of Stillman in his participation in the Fish EEOC investigation. There is evidence to suggest that almost everyone in the Street Department had a problem with Stillman. It could be that Stedman's mere association with Stillman, a wildly unpopular person, motivated the harassment of Stedman. Nonetheless, the Court concludes that Stedman's has presented enough evidence to raise a genuine issue of material fact as to causation.

Stedman also relies on the fact that he reported Fish's harassment to Commissioner Miller. To demonstrate a causal connection between his report of Fish's harassment and Stedman's own harassment, Stedman must show that his harassers were aware of Stedman's report of Fish's harassment. *See, e.g.*, *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714–15 (7th Cir. 2004). "[A]bsent such knowledge, there can be no causal link between" Stedman's report of Fish's harassment and the harassment of Stedman. *See id.* at 715. That the harassers could have known of Stedman's report to Miller is not enough; they must have been aware of his report for any harassment to have been retaliatory. *Id.* The City has offered uncontroverted evidence to establish that Stillman was listed as the only witness in the Fish tort claim notice. And the record contains no evidence to raise an inference that Stedman's harassers were aware that he reported harassment of Fish to Commissioner Miller. Therefore, the

16

Court finds Stedman has not presented sufficient evidence to raise a triable issue as to whether any harassment of him was in retaliation for his own report of Fish's harassment.

### 3. Requested Relief

The City contends that Stedman's claim for retaliatory discrimination requests relief that is unavailable under the ADA (ECF No. 26 at 12.) Indeed, Stedman's request for compensatory and punitive damages are unavailable as remedies for ADA retaliation claims. (ECF No. 26 at 12 (citing *Kramer v. Banc of America Securities, LLC,* 355 F.3d 961 (7th Cir. 2004).) Stedman responds, however, that the Supreme Court has not yet decided the issue, *Kramer* "doesn't make sense," and some district courts have disagreed with *Kramer*. (ECF No. 42 at 16.) Stedman asserts that this Court should decline to follow *Kramer*. (ECF No. 42 at 17.)

In *Kramer*, the Seventh Circuit concluded "that the 1991 Civil Rights Act does not expand the remedies available to a party bringing an ADA retaliation claim against an employer and therefore compensatory and punitive damages are not available" 355 F.3d at 965. Relying on out-of-circuit cases, Stedman asks this Court to decline to follow *Kramer*. This, the Court cannot do. *Kramer* recognizes that plaintiffs may properly seek equitable remedies, including back pay and front pay. *Kramer*, 355 F.3d at 964 ("Section 2000e-5(g)(1) provides that a court may order certain equitable relief including, but not limited to, back pay"); *see also, e.g., Sanchez v. City of Chicago,* No. 05 C 6801, 2007 WL 2358632, *2 (N.D. Ill. Aug. 17, 2007) (seeking back pay

in ADA retaliation claim).   Therefore, Stedman cannot recover compensatory or punitive damages under his ADA retaliation claim.

### B. Title VII Sexual Harassment Claims

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e–2(a)(1).  Discrimination on the basis of sex includes discrimination on the basis of sexual orientation.  *See Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 351–52 (7th Cir. 2017).   To survive summary judgment on a hostile-work-environment sexual harassment claim, a plaintiff must present evidence that would establish that: (1) he was subjected to unwelcome harassment; (2) the harassment was based on his sex; (3) the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"; and (4) there is a basis for employer liability.  *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007).

The City contends that, to the extent Stedman brings a separate claim for sexual harassment, that claim fails because he has no evidence that: (1) he was harassed on the basis of his sex or sexual orientation; or (2) the harassment was sufficiently severe or pervasive.  (ECF No. 26 at 13–15.)  Stedman responds that the City admits employees made vulgar and/or offensive comments to him, fondled his breasts and rubbed his leg without consent, and nicknamed him "Titty Boy" based on his physical appearance.  Thus, he argues that he has raised a genuine issue of fact as to whether

the harassment was based on his sex. (ECF No. 42 at 18.) Stedman also argues that, despite arguing that the actions and statements were not based on any belief that Stedman and Stillman were in a homosexual relationship, the City has not presented any evidence of the harassers' beliefs. (ECF No. 42 at 18.)

To survive summary judgment on his Title VII claim, Stedman must present evidence that would allow a reasonable jury to find that he was harassed because of his sex. He need not prove that his sex was the sole reason for the harassment; he need only prove that his sex was a motivating factor for the harassment. *See, e.g.*, *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007). While a reasonable jury could find that the harassment of Stedman was because of his association with and assistance to Stillman, or because the harassers were simply rude and offensive and did not like Stedman, a reasonable jury could also find that the harassment was based on Stedman's sex.

Significantly, the evidence is that Stedman was nicknamed "Tits" and "Titty Boy," which could indicate sexual stereotyping. In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989), the Supreme Court recognized sexual stereotyping as evidence of sex discrimination. Courts including the Seventh Circuit have considered sexual stereotyping as evidence to support a sexual harassment hostile-work-environment claim. *See, e.g.*, *Spearman v. Ford Motor Co.*, 231 F.3d 1080 (7th Cir. 2000) (stating "sex stereotyping may constitute evidence of sex discrimination" though "remarks . . . based on sex-stereotypes do not inevitably prove that gender played a part in a particular employment [action]") (quoting *Price Waterhouse*, 490 U.S. at 251).

A reasonable jury could find that these nicknames were given to Stedman because his harassers did not consider him to be sufficiently masculine looking, that is, based on sex stereotyping. Then again, it could just be that the harassers were needling Stedman for being flabby or overweight or a "mama's boy." The use of the nicknames was not an incidental part of the alleged harassment; it was consistently directed at Stedman. The comments about Stedman's breasts and the juggling and fondling of them could be understood as reflecting the harassers' sex stereotype. In addition, the harassment involved physical touching, including the rubbing of Stedman's knee without his consent, which could be viewed as sexual in nature. Furthermore, the comments suggesting that Stedman and Stillman had a romantic or sexual relationship and the playing of songs to that effect could suggest that the harassment was based, at least in part, on animus because of on Stedman's failure to meet sex stereotypes. To be sure, a reasonable jury could find that the motivation was based on animus toward Stillman; indeed one would have expected the complained of conduct to have survived Stillman's departure if they were aimed at Stedman's sexual orientation. Still, a reasonable jury would not be required to find that the harassment of Stedman was based on his sex but, based on all the circumstances and context in which he was teased, a jury *could* reasonably find that the harassment was based on Stedman's sex. *See, e.g.*, *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1011 (7th Cir. 1999) (holding genuine issues of material fact existed as to whether harassment was based on employee's sex where harassment allowed an inference that the sexual overlay was not incidental).

The Court has already concluded that Stedman has presented sufficient evidence to raise a genuine issue of material fact as to whether his harassment was sufficiently severe or pervasive, which is the second ground on which the City seeks summary judgment on the Title VII harassment claim. The analysis need not be repeated here. And the Court need not repeat its conclusions that the evidence is insufficient to raise a triable issue as to constructive discharge. Because the same analysis applies regardless of whether Stedman's constructive discharge claim is brought under the ADA or Title VII, the Title VII constructive discharge claims fail to survive summary judgment.

However, there is another matter that should be addressed in regard to the ADA and Title VII claims. The City acknowledges that to prevail on his harassment claim, Stedman will have to demonstrate that there is a basis for employer liability, and its opening brief refers to reports of harassment by Stedman and an investigation by Miller. (*See, e.g.*, ECF No. 26 at 10–11.) However, the City did not make a developed argument that summary judgment was appropriate because of a lack of evidence as to a basis for employer liability. The City raised only two arguments as to why summary judgment should be granted on Stedman's sexual harassment claim: (1) he has no evidence that any harassment was based on his sex, and (2) the harassment was insufficiently severe or pervasive. These perfunctory arguments pertain to the other elements, discussed above, of the claims, rather than to this distinct element. If the liability prong were merely duplicative of the other substantive prongs, it would be meaningless. But the Court need not decide as much here given the lack of

development of the City's arguments. "Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Schaefer v. Univ. Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016). The City cited no case law as to employer liability and any argument that there is no basis for employer liability was undeveloped. Thus, such an argument has been waived.

Stedman has presented sufficient evidence to raise a genuine issue of material fact as to whether the harassment was based on his sex and whether the harassment was sufficiently severe or pervasive. Therefore, his Title VII sexual harassment hostile-work environment claim survives summary judgment.

### C. Negligent Supervision Claim

Stedman asserts a claim for negligent supervision, claiming that the City tolerated a hostile work environment and "failed to properly train and/or supervise Terre Haute Street Department supervisors." (ECF No. 1 at 5.) The City seeks summary judgment on this claim, arguing that it is barred by "discretionary function immunity" under the Indiana Tort Claims Act ("ITCA"). (ECF No. 26 at 8.) The City argues there is no evidence that it violated a clearly established constitutional or statutory right in its hiring, supervision, or retention of any Street Department employee. (ECF No. 26 at 8.) Stedman responds that discretionary function immunity does not apply because he had a constitutional and/or statutory right to be free from workplace harassment and retaliation under the ADA and Title VII. (ECF No. 42 at 12, 13–14.) He also argues that the City has not shown that its acts or omissions were policy decisions "made by consciously balancing risks and benefits," which is required

for immunity.  (ECF No. 42 at 13 (quoting *Peavler v. Bd. of Comm'rs of Monroe Cty.*, 528 N.E.2d 40, 46 (Ind. 1988).)  The City replies that there is no general constitutional or statutory right to be free from workplace harassment; instead, the harassment complained of must have been based on certain characteristics.  (ECF No. 53 at 2.)

"Indiana recognizes a cause of action against employers for negligent hiring, supervision, or retention of an employee." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.,* 551 F.3d 599, 609 (7th Cir. 2008).  "Indiana has adopted the Restatement (Second) of Torts § 317 as the standard with regard to this tort, under which a court must determine if the employer exercised reasonable care in hiring, supervising, or retaining an employee." *Id.*  Under the ITCA, government entities and their officers acting within the scope of their employment are not liable when they act in "[t]he performance of a discretionary function." Ind. Code § 34-13-3-3(7).  Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Kellogg v. City of Gary,* 562 N.E.2d 685, 703 (Ind. 1990) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  "A public official may . . . be held liable if he violated constitutional or statutory rights that were clearly established at the time he acted such that a reasonably competent official should have then known the rules of law governing his conduct." *Id.*

The Court has determined that Stedman has raised genuine issues of material fact regarding claimed violations of the ADA and Title VII. Because those claims survive summary judgment, his negligent supervision claim also survives.

### Conclusion

The City's Motion for Summary Judgment ([ECF No. 25](#)) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Stedman's claims for constructive discharge under the ADA and Title VII. The motion is **DENIED** as to Stedman's claim for retaliatory harassment under the ADA, sexual harassment under Title VII, and his claim for negligent supervision. Compensatory and punitive damages are not available to Stedman on his ADA claim.

The Magistrate Judge is requested to confer with the parties at her earliest convenience to discuss resolution of this matter short of trial.

**SO ORDERED.**

Date: 6/11/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Mark Douglas Hassler
HUNT HASSLER & LORENZ, LLP
hassler@huntlawfirm.net

Paul Jungers
WAGNER, CRAWFORD, GAMBILL & JUNGERS
paul.jungers@gmail.com

Jacob H. Miller
HUNT HASSLER LORENZ KONDRAS LLP
jmiller@huntlawfirm.net